COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Kelsey and McClanahan
Argued at Alexandria, Virginia

TRAVIS JERMAINE ISAAC

                                                              OPINION BY
v.       Record No. 0669-10-4                        JUDGE D. ARTHUR KELSEY
                                                              MAY 10, 2011

COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                                  Stanley P. Klein, Judge

            James K. Freeman (Dominique A. Callins; Kearney, Freeman,
            Fogarty & Joshi, PLLC, on briefs), for appellant.

            Jennifer C. Williamson, Assistant Attorney General (Kenneth T.
            Cuccinelli, II, Attorney General, on brief), for appellee.


        A jury found Travis Jermaine Isaac guilty of aggravated involuntary manslaughter in

violation of Code § 18.2-36.1.  Both before and during trial, Isaac unsuccessfully objected to the

Commonwealth's evidence of a blood alcohol test showing Isaac's state of intoxication.  On

appeal, Isaac argues the trial court erred in admitting this evidence.  We affirm without

addressing the merits of his argument because Isaac introduced substantially similar evidence

during his case in chief, thereby waiving his earlier objection and rendering harmless any alleged

error.

                                                I.

        In March 2009, while driving eastbound in the westbound lanes of Interstate 495, Isaac

ran head-on into a vehicle driven by Cristina L. Palese.  Police officers and rescue teams

immediately responded to the scene of the collision.  One of the paramedics smelled alcohol

inside Isaac's vehicle and on Isaac's person as he was transported by ambulance to the hospital.

Virginia State Police Trooper Rosemary Daly found a bottle of vodka on the floorboard of

Isaac's vehicle. At the hospital, Daly smelled alcohol on Isaac's clothing. The trooper informed Isaac at the hospital that he was under arrest for driving under the influence. Trooper Daly advised Isaac of the implied consent law and requested that the attending nurse obtain a blood sample. Test results revealed Isaac's blood alcohol content (BAC) was 0.16% by weight by volume. Isaac requested and received a second blood alcohol test. The second test resulted in a finding of 0.14% BAC by weight by volume.

Given Isaac's extensive injuries and the ongoing medical attention he was then receiving, Trooper Daly did not handcuff or otherwise physically restrain Isaac in the hospital. Instead, state troopers maintained an around-the-clock custodial presence outside Isaac's room. While Isaac was still in the hospital, Trooper Daly appeared before a local magistrate and obtained warrants for his arrest. Eight days later, officers transferred Isaac from the hospital directly into the Fairfax County Adult Detention Center.

Palese died from her injuries arising out of the collision. A grand jury indicted Isaac for aggravated involuntary manslaughter, alleging he caused Palese's death while "driving under the influence" and acting in a manner "so gross, wanton and culpable as to show a reckless disregard for human life." Code § 18.2-36.1(A), (B). Prior to trial, Isaac sought to suppress the 0.16% BAC certificate of analysis on the ground that Trooper Daly did not have probable cause to make a DUI arrest.

After the trial court denied the motion to suppress, Isaac argued a separate motion *in limine* asserting an alternative ground to exclude the same BAC certificate of analysis. Citing Bristol v. Commonwealth, 272 Va. 568, 636 S.E.2d 460 (2006), Isaac argued he was never actually arrested because Trooper Daly never physically touched him after declaring him under arrest. See Defendant's Motion *in Limine* at 2 (Oct. 30, 2009). In response, the Commonwealth argued the arresting officer's custodial confinement of Isaac within his hospital room constituted

a common law arrest.  See Commonwealth's Opp. to Motion *in Limine* at 5 (Nov. 3, 2009).  In a detailed letter opinion, the trial court rejected Isaac's argument, ruling

> to extend the Bristol analysis to cover the facts of this case — as Mr. Isaac urges — would create a hazardous requirement that a law enforcement officer intrude into a sanitary operating room, thereby interrupting the medical personnel and potentially endangering a suspect's life, merely to physically touch an unconscious suspect for the sole purpose of ensuring the "legality" of an "arrest."  This Court refuses to require such an ill-advised and dangerous gesture in interpreting Code § 18.2-268.2.

Letter Op. at 6-7 (Dec. 31, 2009) (Klein, J.).[1]

Consistent with the trial court's rulings, the Commonwealth introduced into evidence the 0.16% BAC certificate of analysis.  After the Commonwealth rested, Isaac offered into evidence during his case in chief the independent test results showing a 0.14% BAC.  Isaac also presented the testimony of a toxicologist who restated the findings contained in the Commonwealth's 0.16% BAC certificate and commented upon Isaac's 0.14% BAC certificate.  The toxicologist claimed the difference between the two findings rendered both certificates *per se* unreliable.

An agreed jury instruction advised the jurors that they had "received evidence of the alleged blood alcohol content" and could "give this evidence such weight as you see fit in determining the issue of guilt or innocence."  The trial judge also explained:  "If at the time that a person was operating a motor vehicle, that person's blood alcohol level was .08 or higher, you are permitted to infer that such a person was then under the influence of alcohol unless from all the evidence you have a reasonable doubt that the person was under the influence of alcohol."  See Code § 18.2-269(A)(3).  With both BAC certificates in evidence, the jury convicted Isaac of

---

[1] See generally 2 William Blackstone, Commentaries on the Laws of England 287, n.14 (George Sharswood ed. 1892) (citing Williams v. Jones, 95 Eng. Repr. 193 (King's Bench 1736) (Hardwicke, C.J.)); William Waller Hening, The Virginia Justice 77 (4th ed. 1825) (Under the common law, "if an officer comes into a room, and tells the party he arrests him, and locks the door, this is an arrest; for he is in custody of the officer.").

aggravated involuntary manslaughter under Code § 18.2-36.1(A), (B) (causing death while "driving under the influence" and acting in a manner "so gross, wanton and culpable as to show a reckless disregard for human life").

## II.

On appeal, Isaac challenges the trial court's denial of his motions to exclude from evidence the Commonwealth's 0.16% BAC certificate. He was either arrested without probable cause or he was never arrested at all, Isaac argues. Both arguments, Isaac concedes, seek only to defeat the admission into evidence of the Commonwealth's 0.16% BAC certificate of analysis. See Oral Argument Audio at 18:55 to 20:10. We see no reason to decide these issues, however, given that Isaac introduced substantially similar evidence during his case in chief.

Under Virginia law, a litigant waives an objection to evidence when he introduces "evidence dealing with the same subject *as part of his own case-in-chief*." Pettus v. Gottfried, 269 Va. 69, 79, 606 S.E.2d 819, 825 (2005) (emphasis added) (citing Drinkard-Nuckols v. Andrews, 269 Va. 93, 102-03, 606 S.E.2d 813, 819 (2005)). Put another way, when a litigant "unsuccessfully objects to evidence that he considers improper and then introduces on his own behalf evidence of the same character, he waives his earlier objection to the admission of that evidence." Combs v. Norfolk & W. Ry., 256 Va. 490, 499, 507 S.E.2d 355, 360 (1998). The waiver applies to criminal and civil cases, see, e.g., Hubbard v. Commonwealth, 243 Va. 1, 9, 413 S.E.2d 875, 879 (1992); Saunders v. Commonwealth, 211 Va. 399, 401, 177 S.E.2d 637, 638-39 (1970),[2] and affects evidentiary objections based on constitutional as well as statutory and common law grounds, see, e.g., Bynum v. Commonwealth, 28 Va. App. 451, 506 S.E.2d 30

---

[2] See also Snead v. Commonwealth, 138 Va. 787, 801-02, 121 S.E. 82, 86 (1924); Hutchinson v. Commonwealth, 133 Va. 710, 716-17, 112 S.E. 624, 626 (1922); Moore Lumber Corp. v. Walker, 110 Va. 775, 778-79, 67 S.E. 374, 375 (1910).

(1998) (holding a defendant, by testifying to the substance of the statement in his case in chief, waived his earlier <u>Miranda</u> objection to the prosecution's admission of statement).

This same-evidence principle has none of the weaknesses of judicial novelty, for it has stood in roughly the same form for well over a century.  <u>See</u> <u>New York Life Ins. Co. v. Taliaferro</u>, 95 Va. 522, 523, 28 S.E. 879, 879 (1898); <u>Va. & Tenn. Coal & Iron Co. v. Fields</u>, 94 Va. 102, 113, 26 S.E. 426, 426-27 (1896).  Though explained in different ways, the practical effect of the principle remains clear:  "Some courts so hold because the error is harmless, and others because the subsequent introduction of the same evidence is a waiver of the objection. Whether it be placed upon one ground or the other, the result is the same."  <u>Taliaferro</u>, 95 Va. at 523, 28 S.E. at 879.[3]

An exception to the same-evidence principle exists for evidence elicited "during cross-examination of a witness or in rebuttal testimony."  <u>Zektaw v. Commonwealth</u>, 278 Va. 127, 134, 677 S.E.2d 49, 52-53 (2009) (quoting <u>Drinkard-Nuckols</u>, 269 Va. at 102, 606 S.E.2d at 818).[4]  For purposes of the same-evidence principle, rebuttal evidence should not be confused with, or deemed congruent to, the entirety of a criminal defendant's *case in chief* — which, by its very nature, seeks to rebut (using the term in the vernacular) the Commonwealth's evidence.  If the rebuttal exception included all evidence presented during the defendant's case in chief, the

---

[3] The principle is "properly and logically applicable in any case, regardless of the order of introduction, if the party who has brought out the evidence in question, or who has permitted it to be brought out, can be fairly held responsible for its presence in the case."  <u>Pettus</u>, 269 Va. at 79, 606 S.E.2d at 825 (quoting <u>Whitten v. McClelland</u>, 137 Va. 726, 741, 120 S.E. 146, 150 (1923)).

[4] <u>See</u> <u>also</u> <u>Brooks v. Bankson</u>, 248 Va. 197, 207, 445 S.E.2d 473, 478-79 (1994) (holding no waiver for evidence elicited by plaintiff during cross-examination or during plaintiff's rebuttal evidence); <u>Culbertson v. Commonwealth</u>, 137 Va. 752, 757, 119 S.E. 87, 88 (1923) (finding no waiver where defendant cross-examined witnesses and introduced evidence "to the contrary"); <u>Riner v. Commonwealth</u>, 40 Va. App. 440, 477, 579 S.E.2d 671, 689 (2003) (finding no waiver because the defendant "did not use" the objected-to evidence or "any similar hearsay evidence" during his case in chief), <u>aff'd</u> <u>on</u> <u>other</u> <u>grounds</u>, 268 Va. 296, 601 S.E.2d 555 (2004); <u>Brant v. Commonwealth</u>, 32 Va. App. 268, 278, 527 S.E.2d 476, 480-81 (2000) (holding no waiver for cross-examination).

exception would swallow the rule. Almost everything covered by the waiver would likewise be protected by the exception. To adopt such an anomalous interpretation of the doctrine would put us in conflict with numerous Virginia cases.

In the context of the same-evidence principle, Virginia courts have applied the rebuttal exception in very limited circumstances. For example, in Snead v. Commonwealth, 138 Va. 787, 121 S.E. 82 (1924), the Commonwealth introduced into evidence an incriminating letter allegedly sent by the victim to the defendant. The defendant's counsel cross-examined the victim and, in his case in chief, the defendant took the stand and testified he knew nothing about the letter. Id. at 801, 121 S.E. at 86. He did not know of the letter's alleged existence "until it was introduced in evidence on the trial." Id. The defendant did not introduce the letter in his case in chief to prove some point he wanted to make, or offer an alternative letter allegedly received from the victim, or explain that he received the letter but interpreted it differently than the prosecutor. Given the limited nature of the defendant's testimony, Snead held the defendant did not waive his earlier objection.

The rebuttal exception, however, does not apply when the defendant presents in his case in chief the same or similar evidence he previously objected to in order to explain it away or to offer a more favorable interpretation. For example, in Snarr v. Commonwealth, 131 Va. 814, 818, 109 S.E. 590, 592 (1921), the defendant waived his objection when he took the stand and "fully related his recollection" of an alleged reckless driving incident, the subject of his earlier objection. Similarly, in Hutchinson v. Commonwealth, 133 Va. 710, 717, 112 S.E. 624, 626 (1922), the defendant waived his earlier objection when he "subsequently also testified as to the same matter on direct examination." Accord Moore Lumber Corp. v. Walker, 110 Va. 775, 778-79, 67 S.E. 374, 375 (1910) (holding the defendant waived objection to testimony concerning "the writing in question" when he "in his oral testimony undertook to explain its

purport"); <u>Bynum</u>, 28 Va. App. at 459, 506 S.E.2d at 34 (holding a defendant, by testifying to the substance of the statement in his case in chief, waived his earlier <u>Miranda</u> objection to the prosecution's admission of statement).

This point highlights the harmless error underpinnings of the same-evidence principle, <u>Taliaferro</u>, 95 Va. at 523, 28 S.E. at 879, and thus implicates the "imperative demands of common sense," <u>Oliver v. Commonwealth</u>, 151 Va. 533, 541, 145 S.E. 307, 309 (1928). Here, for example, if we excised from the evidentiary record the Commonwealth's 0.16% BAC certificate (the relief Isaac seeks on appeal) we must still examine the rest of the evidence (including Isaac's 0.14% BAC certificate) to determine if the case should be retried.[5] That analysis would surely end with the conclusion that the 0.02% difference had a negligible, if any, effect on the outcome of this case.

No doubt Isaac would protest this reasoning — whether described as waiver or as an analogue of harmless error — by pointing out he would *not* have offered his 0.14% BAC certificate into evidence *if* the trial court had excluded the Commonwealth's 0.16% BAC certificate as Isaac had earlier requested. Perhaps so, but this observation does not authorize us to excise from the record Isaac's own evidence, offered by him during his case in chief, addressed by the trial court in its instructions to the jury, considered by the jurors during their deliberations, and unchallenged by any party on appeal. <u>See</u> <u>Taliaferro</u>, 95 Va. at 523-24, 28 S.E. at 879 ("If the action of the court in permitting this record to be read at the instance of the plaintiffs were now held to be erroneous, it would not affect the record as it was presented in the

---

[5] Code § 8.01-678 makes "harmless-error review required in *all* cases." <u>Ferguson v. Commonwealth</u>, 240 Va. ix, ix, 396 S.E.2d 675, 675 (1990) (emphasis in original and text in parenthetical to statutory citation); <u>Walker v. Commonwealth</u>, 144 Va. 648, 652, 131 S.E. 230, 231 (1926) (holding that the harmless error statute "puts a limitation on the powers of this court to reverse the judgment of the trial court — a limitation which we must consider on every application for an appeal and on the hearing of every case submitted to our judgment"); <u>Tynes v. Commonwealth</u>, 49 Va. App. 17, 23 n.3, 635 S.E.2d 688, 690 n.3 (2006).

trial before the jury, for it would still be in evidence upon the motion of the defendants." (quoting Fields, 94 Va. at 113, 26 S.E. at 427)). In short, while a party can complain on appeal about his opponent's erroneously admitted evidence, he cannot complain about his own. And, when his own evidence is substantially the same as his opponent's, he can complain on appeal about neither.

As for the *scope* of the same-evidence principle, an objecting party waives his objection when he introduces in his case in chief exactly the same evidence he previously objected to. See Taliaferro, 95 Va. at 523, 28 S.E. at 879 (applying waiver principles to the introduction of the "same evidence"); see also Snarr, 131 Va. at 818, 109 S.E. at 592; Walker, 110 Va. at 778, 67 S.E. at 375. The scope of the waiver goes further, however, for it also includes evidence dealing "with the same subject," Pettus, 269 Va. at 79, 606 S.E.2d at 825 (citation omitted), evidence fairly considered to be "of the same character," Combs, 256 Va. at 499, 507 S.E.2d at 360,[6] as well as evidence "similar to that to which the objection applies," Snead, 138 Va. at 802, 121 S.E. at 86 (citation omitted).

In this case, Isaac introduced into evidence a 0.14% BAC certificate of analysis. This evidence deals with the same subject as, and is sufficiently similar to, the Commonwealth's 0.16% BAC certificate. Both certificates address the same topic: the blood alcohol content in Isaac's blood. Both establish BAC levels in excess of 0.08%, thereby triggering the inference of Code § 18.2-269(A)(3) "that the accused was under the influence of alcohol intoxicants at the

---

[6] "It is well settled in this jurisdiction that a party waives an objection to evidence, claimed to be irrelevant, by introducing the *same character of evidence* himself." Hoier v. Noel, 199 Va. 151, 155, 98 S.E.2d 673, 676 (1957) (emphasis added); see also Patterson v. Commonwealth, 222 Va. 653, 663, 283 S.E.2d 212, 218 (1981) ("An objection to evidence cannot be exploited on appeal by a party who has, at some other time during the trial, voluntarily elicited evidence of the same character.") (superseded on an unrelated point by Code § 19.2-264.3(C)).

time of the alleged offense."  See also Code § 18.2-36.1(A), (B).  The two certificates differ in degree, though only slightly, but not in kind.

III.

In sum, we need not address whether the trial court erred in admitting into evidence the Commonwealth's 0.16% BAC certificate.  Isaac waived his objection by introducing sufficiently similar evidence during his case in chief.  For this reason, we affirm Isaac's conviction for aggravated involuntary manslaughter.

Affirmed.